# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

KATHERINE PETILLO, on behalf of herself
and all others similarly situated,

                        Plaintiff,

 v.

DILIGENT CORPORATION and
UNIVERSITY OF COLORADO HEALTH
dba UCHEALTH,

                     Defendants.

Case No. 1:23-cv-02439-LLS

Judge Louis L. Stanton

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED
# <u>MOTION FOR FINAL APPROVAL</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   THE SETTLEMENT AND ITS VALUE ........................................................ 2

III.  BACKGROUND ................................................................................................. 3

   a.  Defendants' Data Breach and Plaintiffs' Claims ............................................. 3

   b.  Procedural History ........................................................................................... 4

   c.  Mediation & Preliminary Approval .................................................................. 5

   d.  Notice Program & Claims Activity ................................................................... 5

IV.   ARGUMENT ...................................................................................................... 6

   a.  The Court Should Approve the Settlement Under Rule 23 and the *Grinnell* Factors ........ 6

      i.   Plaintiff and counsel represented the class "adequately" ................................. 8

      ii.  The Court should presume the Settlement is "approvable" ............................ 9

      iii. The Settlement's relief is "adequate" considering this case's complexity and risks and the relief this settlement achieves ............................................................. 11

      iv.  The settlement treats class members equitably and is within the "range of reasonableness" .......................................................................................... 13

      v.   The class's reaction to the settlement ........................................................ 14

   b.  The Court Should Certify the Settlement Class for Settlement Purposes ........................ 15

   c.  The Court Should Find the Notice Program Satisfied Rule Due Process ........................ 16

V.    CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... 16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ........................................................................................... 8

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 13

*Brady v. Due N. Holdings, LLC*,
  No. 17-cv-1313 (S.D. Ind. Oct. 16, 2018) ................................................................. 14

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614 (S.D.N.Y.
  June 7, 2011) .............................................................................................................. 10

*Chang v. Philips Bryant Park LLC*,
  No. 17 Civ. 8816 (LTS) (SLC), 2019 U.S. Dist. LEXIS 185297, 2019 WL 8105999 (S.D.N.Y.
  Oct. 23, 2019) .............................................................................................................. 7

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ....................................................... i, 6, 7, 8, 11, 13, 14

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y 2009)............................................................................. 6, 7

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ........................................................................................... 8

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2007) ......................................................................................... 10

*Desue v. 20/20 Eye Care Network, Inc.*,
  No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355 (S.D. Fla. July 8, 2023) ........... 7, 11

*Dornberger v. Metropolitan Life Ins.*,
  203 F.R.D. 118 (S.D.N.Y. 2001)................................................................................ 13

*Fulton-Green v. Accolade, Inc.*,
  2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sep. 23, 2019) ......................................... 11

*Hammond v. The Bank of N.Y. Mellon Corp., No. 08 Civ. 6060 (RMB)(RLE)*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................... 12

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ 10, 12

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................... 15

*In re Canon United States Data Breach Litig.*,
  No. 20-CV-6239-AMD-SJB, 2023 U.S. Dist. LEXIS 206513 (E.D.N.Y. Nov. 15, 2023) ....... 14

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200 (W.D. Ky. Aug. 23,
  2010) ................................................................................................................ 7, 11

*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd,
  Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010 ............................... 9

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd, Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d
  Cir. 2010) .............................................................................................................. 9

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394 (S.D.N.Y. 2018) ............ 10

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................................................... 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) ................................................................................. 12

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
  No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805 (S.D.N.Y. June 8, 2022) ............. 8, 13

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. June 10, 2009) ................................................................... 7

*In re Interpublic Sec. Litig.*,
  No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ................................. 11

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577 (S.D.N.Y. Nov. 26,
  2002) ................................................................................................................... 13

*In re Luxottica Group S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................. 6

*In re Nano-X Sec. Litig.*,
  No. 21-CV-5517 (RPK) (PK), 2024 U.S. Dist. LEXIS 71340 (E.D.N.Y. Apr. 17, 2024) ....... 15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) ..................... 11

*In re Telik*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................... 13

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) ............................................................... 12

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................... 14

*Reynolds v. Marymount Manhattan Coll.*,
    No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993 (S.D.N.Y. Oct. 23, 2023)............. 14

*Sewell v. Bovis Lend Lease LMB, Inc.*,
    2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ........................................ 13

*Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666 (S.D.N.Y.
    Mar. 24, 2014) .................................................................................. 9

*Soler v. Fresh Direct, LLC*,
    2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023 .......................................... 8

*Stollenwerk v. TriWest Healthcare All.*,
    No. CV–03–0185–PHX–SRB (D. Ariz. June 10, 2008) ......................................... 12

*Torretto v. Donnelley Fin. Sols., Inc.*,
    No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440 (S.D.N.Y. Jan. 5, 2023).................. 14

*Warren v. Xerox Corp.*,
    No. 01-CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951 (E.D.N.Y. Sep. 19, 2008) .................. 13

*Willix v. Healthfirst, Inc.*,
    No. 07–cv–1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ................................... 10

**Rules**

Federal Rules of Civil Procedure, Rule 23 ............................. i, 1, 2, 3, 5, 6, 7, 8, 9, 11, 14, 15, 16

## I.    INTRODUCTION

The Court should approve the parties' settlement under Rule 23. Since the Court preliminarily approved the settlement in January 2024 as "fair, reasonable, and adequate." (Dkt. No. 28), the notice and claims program has only proved that point. The settlement administrator notified the class through mail, reaching 40,451 class members— 98.39% of the class. Decl. of Jazminee Shumway of Angeion Group Re: Notice and Administration ("Angeion Decl."), ¶ 10. In response, the class welcomed the settlement, with many Settlement Class Member filing claims, only three individuals opting out, and no Settlement Class Members objecting.[1] Given the benefits it will deliver, the Court should approve the settlement under Rule 23 so the parties may deliver them to the class.

For background, this case involves a security incident wherein the "personally identifiable information" ("PII") and "personal health information" ("PHI") (collectively "sensitive information") of 41,299 persons related to    Defendant University of Colorado Health, dba UCHealth, including patients, was accessed by an unknown person. That information was housed on software which was designed and licensed by Defendant Diligent Corp.  In September 2022, the unknown person was able to access and download Plaintiff's and the Settlement Class's sensitive information, which could include names, addresses, dates of birth, medical treatment information, and health insurance information, and, for a small number of individuals, Social Security Numbers.

This fact pattern posed risks for both sides. On liability, Plaintiff believed she would have proved Defendants had not met their duties to safeguard the sensitive information under tort, contract, and statutory principles. On the other hand, Defendants disputed the putative class could

---

[1] The deadline for Settlement Class Members to submit a Claim Form is June 1, 2024

prove losses from the breach, including whether they suffered fraud and spent resources remediating or mitigating it, and that Plaintiff could plead viable causes of action.

Recognizing those risks and the risks that come with litigating data breach class actions, the parties explored grounds for a settlement. In so doing, the parties agreed to mediate with Attorney Bruce A. Friedman of JAMS, who brokered a framework for settling. In the weeks that followed, and after additional negotiations, the parties reached a final resolution and diligently negotiated and prepared the Settlement, along with accompanying notices, a Claim Form, and other exhibits.

As recognized by the Court in the Preliminary Approval Order (Dkt. 28), the Settlement is fair, reasonable, and adequate, and, should be approved. It secures significant benefits for the Settlement Class from the $490,000 common fund, including credit monitoring, cash payments even without proof of loss, and reimbursement for out-of-pocket expenses and lost time. Since preliminary approval was granted, the parties and the settlement administrator, Angeion Group, directly notified more than 98% of the Settlement Class via U.S. mail, providing them a chance to claim benefits either online or by mail. In response, only three individuals excluded themselves and zero Settlement Class Members filed objections. As a result, the Settlement satisfies Rule 23(e) and should receive final approval.

## II.    THE SETTLEMENT AND ITS VALUE

The Settlement's details are contained in the Settlement Agreement the Parties executed on December 5, 2023, Dkt. 26-1 ("S.A."). The Settlement negotiated on behalf of the Settlement Class establishes a $490,000 non-reversionary settlement fund, which will be used to pay for benefits to the Settlement Class, notice and administration costs, Plaintiff's service award, and attorneys' fees and costs. S.A. ¶42. Specifically, the Settlement provides for the following benefits

to the class: *first*, it guarantees claimants credit monitoring for two years at no cost with $1 million in fraud insurance; *second*, Settlement Class Members can receive a $50 cash payment without being required to prove any losses from the breach; and *third*, if Settlement Class Members suffered losses following the breach, they can receive up to $500 in expenses, up to $100 for lost time, and up to $3,000 for "extraordinary" losses—if they did not elect the $50 payment. *Id.* ¶ 52. The Settlement Fund also pays the (1) administration and notice expenses, (2) attorneys' fees up to one-third of the total amount of the fund, or $163,333.33, (3) expenses up to $10,000, and (4) a Court-approved service award for the Class Representative of $4,000. *Id.* ¶¶ 66, 82, 84. In addition, members of the Settlement Class who submitted a timely and valid claim will receive a *pro rata* share of the net Settlement Fund after all settlement administrative expenses have been paid. *Id.* ¶ 54.

As the forgoing makes clear, the Court should certify the Settlement Class and approve the settlement under Rule 23 so the parties may deliver these benefits.

### III.     BACKGROUND

#### a.  Defendants' Data Breach and Plaintiffs' Claims

Diligent provides management and governance software to board members of corporations, government organizations, and not-for profit groups across the country, allowing them to share information and collaborate. Dkt. 1 (Compl.), ¶¶ 1, 19. One of Diligent's subsidiaries, Steele Compliance, offers a hosted application called Incident Manager, which supports certain governance activities.  UCHealth used Incident Manager to support certain of its business and operations functions.

On November 9, 2022, Diligent learned that an unauthorized third party had gained access to Incident Manager and, on September 30, 2022, downloaded certain files (the "Security Event").

Diligent notified UCHealth about the Security Event two days later. UCHealth notified its patients about the Security Incident on or around January 27, 2023, informing them that certain patient and provider information may have been accessed and downloaded by an unauthorized individual and warning them to take steps to protect themselves from identity theft by monitoring accounts for suspicious activity. *Id.* ¶¶ 41–44, Ex. A. Plaintiff is a patient of UCHealth. *Id.* ¶¶ 33–34. Certain information about the Plaintiff, such as name, address, date of birth, and some treatment information, was impacted by the Security Incident, along with approximately 41,299 other individuals. Dkt. 26 ("Borrelli Prelim. Approval Decl."), ¶ 2.

### b. Procedural History

Following notification to those affected by the Security Incident and an investigation by Settlement Class Counsel, Plaintiff filed this class action lawsuit against Defendants in this Court on March 22, 2023. Borrelli Prelim. Approval Decl. ¶ 4. Plaintiff alleged, on behalf of herself, a putative nationwide class, and a Colorado subclass that, due to the Security Incident, Defendants are liable for negligence and negligence *per se*, breach of an implied contract, breach of contract, unjust enrichment, and violation of the Colorado Consumer Protection Act. *Id.* ¶ 5.

Recognizing the benefits of early resolution of Plaintiff's and the putative class's claims, the parties agreed to mediate on August 16, 2023, with Bruce Friedman from JAMS. *Id.* ¶¶ 6, 9. After agreeing to mediate and prior to the mediation, Plaintiff requested, and Defendants produced, key information about the size and residence of the putative class, the types of information affected by the Security Incident, the scope of the Security Incident and how it occurred, and how Defendants responded to the Security Incident. *Id.* ¶ 7. Armed with this information, Plaintiff was able to enter mediation with a deep understanding of the facts of the case, despite the early stage of the litigation. *Id.* ¶ 8.

### c.   Mediation & Preliminary Approval

During the mediation, Mr. Friedman provided a framework that enabled the parties to reach a resolution on certain key terms, but it was not until weeks later that the parties reached a final resolution after continued negotiations. *Id.* ¶ 13. A term sheet was agreed to on September 8, 2023, and in the weeks that followed, the parties diligently negotiated and prepared the Settlement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id.* ¶ 14. The Settlement was finalized and executed on December 5, 2023. Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiff and Settlement Class Members. *Id.* ¶ 17.

In January 2024, the Court "preliminarily" approved the parties' settlement as "fair, reasonable, and adequate." (Dkt. 28). In so doing, it found that plaintiffs "will likely be able to certify the Settlement Class for purposes of judgment on the Settlement because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3)." *Id.* ¶ 1. The Court further appointed Plaintiff as the Settlement Class Representative and found that Plaintiff's Counsel "will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as Settlement Class Counsel…" *Id.* ¶ 2. Lastly, it appointed Angeion Group as the settlement administrator, ordering Angeion and the parties to notify the class about settlement. *Id.* ¶ 7.

### d.   Notice Program & Claims Activity

One week after the Court preliminarily approved the settlement, Angeion received 41,308 records with Settlement Class Members' names and mailing addresses. Angeion Dec. ¶ 6. Angeion then reviewed the file and removed duplicates, resulting in "41,110 unique records." *Id.* But before notifying the Settlement Class using those records, Angeion also processed them through USPS's "National Change of Address" database. *Id.* ¶ 8. That allowed Angeion to update the contact

information for individuals who had moved within the last four years and who filed a change of address card with the USPS. *Id*. USPS returned only 986 postcards as "undeliverable," and as a result of Angeion's efforts to update the class member's addresses, another 669 notices were re-mailed. *Id.* ¶ 9.

In total, as of May 29, 2024, Angeion mailed 41,110 notices with only 659 remaining undeliverable. *Id*. ¶ 10. That means Angeion reached 98.39% of the Settlement Class. *Id*. Once notified, Settlement Class Members started accessing the website set up by Angeion at www.Diligent-IncidentManagerSettlement.com. *Id.* ¶ 11. The site hosted all documents at issue in this settlement and allowed Settlement Class Members to claim benefits directly through the website. *Id*. Through May 29, 2024, 1,616 "unique visitors" visited the website, with 4,738 page views. *Id*. Finally, Angeion hosted a toll-free hotline dedicated to answering questions about the settlement and updating contact information for Settlement Class Members if needed. *Id*. ¶ 12. As of May 29, 2024, that service received 112 calls. *Id*. Therefore, Angeion exhausted all "reasonable" means to contact Settlement Class Members about the settlement and succeeded in doing so. The deadline to claim benefits is June 1, 2024, and Angeion continues to receive claims. *Id.* ¶13.

## IV.     ARGUMENT

### a.  **The Court Should Approve the Settlement Under Rule 23 and the *Grinnell* Factors**

Courts encourage parties to settle class actions given their potential for costs, delays, complexity, and risks: "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (In re Luxottica Group Litig.), 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y 2009) ("There

6

is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). And this is not only a "complex" case — "it lies within an especially risky field of litigation: data breach." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *24 (S.D. Fla. July 8, 2023). This is why courts favor settling data breach cases, as "proceeding through the litigation process[…] is unlikely to produce the plaintiffs' desired results." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010).

Courts approve settlements under these principles in two steps. First, the "preliminary stage," that the parties completed under this approval order. *Chang v. Philips Bryant Park LLC*, No. 17 Civ. 8816 (LTS) (SLC), 2019 U.S. Dist. LEXIS 185297, 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019). Second, after the parties notify the class, the Court must decide whether to "finally" approve the settlement under precedent and Rule 23.

The Second Circuit has developed factors governing whether to approve settlements, and this settlement meets them. Those factors are: (i) the case's complexity and "likely duration;" (ii) how the class has reacted to settlement; (iii) the case's litigation stage; (iv) the case's risks in proving liability; (v) the risks in proving damages; (vi) the risks in maintaining a case through trial; (vii) defendant's ability to pay a "greater judgment;" (viii) the "range of reasonableness" for the case. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Altogether, those factors determine whether the settlement results from "serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies[.]" *See Cohen*, 262 F.R.D. at 157.

Rule 23 lists its own criteria for approving settlements, but factors that do not supplant the *Grinnell* factors. *Soler v. Fresh Direct, LLC*, 2023 U.S. Dist. LEXIS 42647, at *8 (S.D.N.Y. Mar. 14, 2023) ("This [Rule 23] inquiry overlaps with the Grinnell factors"). Instead, Rule 23's criteria focuses "the court and the lawyers on the core concerns of procedure and substance" under four factors: (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id*; *see* Rule 23(e). Within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id*.

Because the *Grinnell* and Rule 23(e) factors "overlap," plaintiffs condense their analysis below to reflect that principle. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *8 (applying a condensed analysis); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022) (same).

     i.   <u>Plaintiff and counsel represented the class "adequately"</u>

The settlement satisfies Rule 23(e)(2)(A) because Plaintiff and her counsel represented the class "adequately" when negotiating it. Meeting this factor entails determining whether Plaintiff's interests are "antagonistic" to class members' interests and whether Plaintiffs' counsel is qualified and experienced in the litigation. *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). Plaintiffs have satisfied this inquiry.

There is no antagonism between Plaintiff, her counsel, and the Settlement Class because Plaintiff is accepting the same relief on the same terms as all other Settlement Class Members. Although she requests a service award, such an award is not guaranteed, and the class will receive the settlement's benefits no matter how the Court rules on Plaintiff's request. To achieve the service award, Plaintiff helped her attorneys investigate the breach, supplied the facts supporting

her complaint, provided information in advance of mediation and was available throughout the mediation and settlement process to answer questions and represent the interests of the Settlement Class. Dkt. 32 ("Borrelli Fee Decl."), ¶ 27. What's more, Plaintiff and her counsel withheld negotiating attorney's fees and costs and a service award until after the parties agreed on the settlement's core terms, thus removing any conflict that may result from concurrent negotiation. Borrelli Prelim. Approval Decl. ¶ 11.

Plaintiff's counsel also has the experience needed to represent the Settlement Class and secure relief. Decl. of Raina Borrelli in Support of Unopposed Motion for Final Approval ("Borrelli Final Approval Decl."), Ex. 1. Counsel has represented data breach victims across the country and reached settlements that courts routinely approve. And that experience served Plaintiff and the putative class considering the results achieved in the settlement. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting "extensive" experience of counsel in granting final approval); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Class Counsel was fully informed about the facts, risks, and challenges of this novel action and had a sufficient basis on which to negotiate a very significant settlement.

As a result, the Court should find Plaintiff has satisfied this factor.

ii.    The Court should presume the Settlement is "approvable"

To achieve the "fairness" that Rule 23(e)(2)(B) demands, plaintiffs must show their proposal was negotiated at "arm's length." That exists if plaintiffs reached their agreement "experienced, capable counsel knowledgeable in complex class litigation" and through a "mediator's involvement[.]" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y.

2019). In fact, if the parties satisfy this factor, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("When a settlement is the product of arms-length negotiations between experienced, capable counsel after meaningful discovery, it is afforded a presumption of fairness, adequacy, and reasonableness.") (cleaned up). That presumption applies here.

As detailed above, Plaintiff's counsel litigates privacy cases like data breaches in state and federal actions, meaning they understand how this settlement compares to other data breach settlements. Borrelli Final Approval Decl., Ex. 1. This allowed Plaintiff's counsel to evaluate the value of this case, including the risks of proceeding in litigation compared to the relief that could be achieved. Armed with this knowledge, Plaintiff's counsel negotiated the Settlement terms with a mediator, Bruce Freidman, an experienced mediator with JAMS. Borrelli Prelim. Approval Decl. ¶¶ 9-12

Although the parties settled this matter before formal discovery started, that is no bar to approving their agreement's terms as Plaintiff's counsel insisted on pre-mediation discovery. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) ("although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, *6 (S.D.N.Y. June 7, 2011) (counsel had "completed enough investigation to agree on a reasonable settlement" even without discovery). Indeed, the "pertinent question" is not whether plaintiffs conducted Rule 26 discovery, but "whether counsel had an adequate appreciation of the merits of the case before negotiating" *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011). Because Plaintiff

gathered the facts needed before mediating, she understood the landscape affecting settlement just as if she had conducted discovery. Moreover, early settlement where, as here, the Parties are adequately informed to negotiate is to be commended. *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement an avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

For these reasons, the court should find Plaintiff has satisfied this factor and the third *Grinnell* factor.

    iii.   The Settlement's relief is "adequate" considering this case's complexity and risks and the relief this settlement achieves [2]

Without settling, this case faced risks that would have delayed or doomed Plaintiff's chances at recovery. Almost "all class actions involve a high level of risk, expense, and complexity[.]" *Desue*, 2023 U.S. Dist. LEXIS 117355, at *24. And this is not only a "complex" case—"it lies within an especially risky field of litigation: data breach." *Id*. This is why courts favor settling breach cases, as "proceeding through the litigation process[…] is unlikely to produce the plaintiffs' desired results." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010); *see, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare.").

---

[2] There are no other agreements Plaintiff would otherwise need to disclose under Rule 23(e)(3).

To start, data breach cases do not always clear the motion-to-dismiss stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 *(RMB)(RLE)*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting dismissed data breach cases at the Rule 12(b)(6) stage). And when they do, Courts will still sometimes dismiss them at summary judgment or refuse to certify them. *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (same). Although Plaintiff believes she would have overcome these hurdles given the facts in issue, they presented risks that justified settling at the stage Plaintiff did.

Moreover, to justify taking this case to trial, Plaintiff would need to clear these hurdles and achieve a better result when there are no grounds to believe trial would yield one. The Court and parties cannot estimate the upside in litigating this case through to trial because breach victims have yet to try a case, so there is no verdict to measure their result against. There is no evidence Defendants could "withstand a greater judgment," and would that factor defeat settlement if it could.[3] Nor is this case the right candidate for trial given the relief the Agreement delivers. Again, the Agreement achieves what Plaintiff wanted in her complaint—compensation for the putative class's losses. There is no reason to risk losing recovery entirely by refusing to settle on those terms.

Last, Plaintiff petitioned the Court to approve her attorney fee and award requests, both falling within what district courts approve. Dkt. 30, 31; *see Warren v. Xerox Corp.*, No. 01-CV-

---

[3] *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.2d at 178 n.9 ("ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.").

2909 (JG), 2008 U.S. Dist. LEXIS 73951, at *22 (E.D.N.Y. Sep. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33 percent of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts") (citation omitted) *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six.") (citations omitted)); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit" (citation omitted)); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *Dornberger v. Metropolitan Life Ins.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted).

As a result, the Court should find this factor supports approval under this factor and the first, fourth, fifth, and sixth *Grinnell* factors.

   iv.   The settlement treats class members equitably and is within the "range of reasonableness"

The results the Agreement secures exceeds those won in other data breach settlements. Indeed, this settlement provides class members an "alternative cash payment" of $50.00 (subject to a pro rata increase or decrease) that they could claim without needing to prove a claim. *See In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *29-30 (S.D.N.Y. June 8, 2022) ("Comparable data-breach cases have provided lower settlement payments to class members, with relief that includes a payment of $10 or merchant coupons"); *In re Canon United States Data Breach Litig.*, No. 20-CV-6239-AMD-SJB,

2023 U.S. Dist. LEXIS 206513, at *14 (E.D.N.Y. Nov. 15, 2023) (reimbursing out-of-pocket losses and offering credit monitoring, but no cash payments); *Brady v. Due N. Holdings, LLC*, No. 17-cv-1313, Doc. No. 59, at 4 & Doc. No. 65, at 2 (S.D. Ind. Oct. 16, 2018) (same); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440, at *5 (S.D.N.Y. Jan. 5, 2023) (same); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993, at *6 (S.D.N.Y. Oct. 23, 2023) (same). This is not to mention that class members may also claim compensation for out-of-pocket losses, lost time, and credit monitoring. S.A. ¶ 52.

On equity, Rule 23 considers "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. In other words, the purpose is "equity," not "equality" in treatment. This settlement advances equity because it allowed claimants to claim "actual" losses from the breach, including claims for "extraordinary losses," claims for "out-of-pocket" expenses, and claims for "lost time." S.A. ¶ 52. Such provisions ensure the settlement accounts for any differences among the class member's claims.

### v.    The class's reaction to the settlement

It is "well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *Grinnell*, 495 F.2d at 462-63. Here, no Settlement Class Members objected to the settlement and only three opted out, meaning there is no evidence the Settlement Class disapproves of it in any way. Angeion Decl., ¶¶ 14-15. As a result, "the reaction of the class to the settlement also weighs in favor of final approval of the Settlement

Agreement." *In re Nano-X Sec. Litig.*, No. 21-CV-5517 (RPK) (PK), 2024 U.S. Dist. LEXIS 71340, at *10 (E.D.N.Y. Apr. 17, 2024).

      **b. The Court Should Certify the Settlement Class for Settlement Purposes**

      Certifying a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 658 (S.D.N.Y. 2015) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). The Court certified the Settlement Class in its preliminary approval order and the reasons justifying the order have not changed. *See* Dkt. 28. For that reason, the Court can rely on its order without analyzing Rule 23's factors again. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage).

      For completeness, the Court certified the class for four reasons. First, it found the Settlement Class was "numerous" because "joinder of all Settlement Class Members would be impracticable[.]" Dkt. 28, ¶ 1; Rule 23(a). With over 41,000 Settlement Class Members, the facts supporting that finding has not changed. Second, Plaintiff is an adequate Settlement Class Representative, having experienced the same injuries as the rest of the Settlement Class stemming from the Security Incident and having retained counsel experienced in data breach class action litigation. Third, typicality and commonality remain the same, as the same issues that affect Plaintiff affect the Settlement Class, and those issues have not changed. And fourth, all issues impacting the Settlement Class predominate over any "individualized" issues. Any differences between Settlement Class members did not impact the analysis here, as only three opted out and

none objected. As a result, the Court should apply the same analysis it applied in its preliminary approval order to certify the Settlement Class under Rule 23.

### c. The Court Should Find the Notice Program Satisfied Rule Due Process

The Court should approve the notice program because it succeeded. Settlement Class Members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Rule 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

As discussed above, Angeion sent direct notice via U.S. Mail to more than 98% of the Settlement Class. Additionally, the settlement website and telephone line maintained by Angeion provided the Settlement Class with ample opportunity to obtain information about the Settlement and file a claim. As a result, the notice program here satisfies due process. It was the "best notice that [was] practicable under the circumstances" and succeeded at what it aimed to do. Rule 23(c).

### V.    CONCLUSION

For the reasons above, the Court should finally approve the parties' settlement, certify the Settlement Class, and enter the proposed final approval order.

Dated: May 31, 2024              By: */s/ Raina C. Borrelli*
                                 Raina C. Borrelli
                                 STRAUSS BORRELLI PLLC
                                 One Magnificent Mile
                                 980 N. Michigan Avenue, Suite 1610
                                 Chicago IL, 60611
                                 Telephone: (872) 263-1100
                                 Facsimile: (872) 263-1109
                                 raina@straussborrelli.com

                                 James J. Bilsborrow (NY Bar # 519903)
                                 WEITZ & LUXENBERG, PC
                                 700 Broadway
                                 New York, NY  10003
                                 Telephone: (212) 558-5500
                                 jbilsborrow@weitzlux.com

                                 *Attorneys for Plaintiff and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on May 31, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 31st day of May, 2024.

STRAUSS BORRELLI PLLC

By:  */s/ Raina C. Borrelli*
     Raina C. Borrelli
     raina@straussborrelli.com
     STRAUSS BORRELLI PLLC
     One Magnificent Mile
     980 N Michigan Avenue, Suite 1610
     Chicago IL, 60611
     Telephone: (872) 263-1100
     Facsimile: (872) 263-1109